## Campbell et ux. v. Milam et al.

(Decided March 4, 1930.)

314

F. J. EVERSOLE for appellants.

H. C. FAULKNER and W. E. FAULKNER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming.

On March 10, 1925, the appellants and plaintiffs, below, A. B. Campbell and wife, owned a farm in Perry county containing 40 acres and of the value of $800. At the same time Thomas Milam owned a stock of merchandise in the neighborhood of the Campbell farm, and the parties agreed to exchange the properties they respectively owned, i. e., Milam agreed to accept a deed to the farm at the valuation of $800, and the stock of merchandise was to be invoiced and Campbell was to pay the difference between its amount and the value of the farm on the outstanding indebtedness of Milam. On the next day, March 11, 1925, the stock of merchandise was invoiced and it, with a freight bill to be paid by Campbell, amounted to $1,107.86. On the following day, March 12, plaintiffs executed a deed of conveyance of the farm under the direction of Milam to his wife and three infant children, and the stock of merchandise was delivered to the vendors therein.

This equity action was filed in the Perry circuit court on December 9, 1926, by plaintiffs against the vendees in their deed, seeking to cancel it upon the alleged grounds that it was without consideration, and was fraudulently obtained; it being further alleged in elucidation thereof that Milam at the time of the trade owed debts for merchandise bought by him and put into the stock aggregating more than its invoiced value, and that soon after it was delivered to plaintiffs it was levied on by the various creditors of Milam and sold by the sheriff of the county under such process and brought only $250, which was the bid of Mrs. Campbell. The averments of the petition were denied by defendants, and it was further alleged that plaintiffs agreed to pay the difference between the valuation of the stock and the farm upon the indebtedness of Milam, which in fact did not exceed that difference, but that, if it should prove to be otherwise,

then Milam agreed to pay plaintiffs the excess. Following pleadings made the issues and after the taking of testimony the cause was submitted to the court who dismissed the petition, to reverse which plaintiffs prosecute this appeal.

It readily will be seen that the only issue for determination is one of fact, which the chancellor who tried the case and rendered the judgment appealed from determined against plaintiffs, and, unless we entertain something more than a doubt as to the propriety of that finding, we should affirm the judgment under the universally applicable rule in such cases. Plaintiffs testified that shortly after they took charge of stock there was a judgment in favor of one of the creditors of Milam amounting to about $52, and that plaintiffs were presented an execution on that judgment directly after assuming control of the stock, but that they did not have the money at that time with which to pay it, and later it was levied on the stock of merchandise, some attachments followed seeking to collect, not only other of Milam's debts, but also some debts that had been created by plaintiffs after their purchase of the stock of merchandise; but the entire sum involved in all the actions against the different debtors did not amount to the invoiced value of the stock of merchandise. It will be perceived that there was about $300 difference between the agreed value of the farm and the invoiced value of the stock of merchandise which amount plaintiffs agreed to pay by settling Milam's debts against the stock of merchandise purchased by them. The latter finally, and somewhat unconvincingly, testified that Milam, instead of being indebted to the extent of only about $300, was actually indebted in the sum of $507. But it later developed in the testimony that some of the items going to make up that aggregate sum were debts contracted by plaintiffs after they became the owners of the stock of merchandise. Plaintiffs admit that they had no money with which to discharge their obligation to pay the indebtedness of Milam; and, while they claim that they paid $132 thereon, they say that it was obtained from the proceeds of the daily sales they made while operating the store, which was less than one month before it was closed by the sheriff under the court processes above mentioned.

On the other hand, defendants, by their testimony, proved that the indebtedness of Milam did not aggregate the sum left in the hands of plaintiffs with which to pay

his debts, and under such condition, if there existed no other elements in the case, we would not be authorized under the rule supra to disturb the judgment of the chancellor. In arriving at that conclusion we have not overlooked the fact of the inability of plaintiffs to restore the status, the action in effect being one for a rescission. They put it out of their power to do so by dispossessing themselves, in one way or another, of the stock of merchandise; nor have we taken into consideration other essential legal elements to entitle plaintiffs to maintain this action, but have confined ourselves to the single issue of fact relied upon in the petition as ground for the relief sought therein. It is our conclusion from the evidence as a whole, as it no doubt was of the trial court, also, that, at most, there was but a small amount of Milam's indebtedness, if any, in excess of the fund left in the hands of plaintiffs with which to pay his merchandise debts, and it is proven indisputably that at that time Milam was solvent, and if such excess indebtedness, if any, was of such a nature as that the stock of merchandise in the hands of plaintiffs could be subjected thereto, then the latter would have had a cause of action for such an amount against Milam, which, under the proof, could have been realized and which course should have been pursued by them rather than to suffer the stock of merchandise to be levied upon and sold in the manner it was done.

Perceiving no grounds for reversing the judgment, it is affirmed.